IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DEBORAH CORDOVA,

   **Plaintiff,**

  vs.           Civ. No. 12-92 ACT/LAM

CHRISTUS ST. VINCENT HOSPITAL,
BRENDA STEWARD, and KELLY
BERNATENE,

   **Defendants.**

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** is before the Court on Defendants' Motion for Summary Judgment ("Motion"), filed February 7, 2013. [Doc. 43.] Plaintiff filed her Response ("Response") on March 4, 2013 [Doc. 46], and Defendants filed their Reply ("Reply") on March 28, 2013 [Doc. 53]. Having considered Defendants' Motion, Plaintiff's Response, Defendants' Reply, the record in this case and the applicable law, the Court finds that Defendants' Motion is well taken and it will be GRANTED.

## PROCEDURAL BACKGROUND

On January 30, 2012, Deborah Cordova ("Plaintiff") filed her Complaint for Employment Discrimination and Retaliation. [Doc. 1.] Plaintiff named Christus St. Vincent Hospital, Brenda Stewart, and Kelly Bernatene as Defendants ("Defendants"). Plaintiff's Complaint alleges (1) discrimination by Defendant Christus St. Vincent Hospital ("CSVH") based on sex, pregnancy, national origin and race in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e; (2) discrimination by all Defendants based on sex, pregnancy, national origin and race in violation of the New Mexico Human Rights Act, NMSA 1978,

Section 28-1-7, *et seq*.;  and (3) violation of New Mexico public policy by CSVH in terminating Plaintiff's employment.  On May 17, 2012, Defendants filed their Answer denying Plaintiff's allegations and setting forth a number of affirmative defenses. [Doc. 2.]  On January 14, 2013, discovery was completed.

Defendants' Motion for Summary Judgment [Doc. 43] seeks summary judgment on each of Plaintiff's claims and sets forth twenty-six undisputed material facts in support thereof. Defendants argue that (1) Plaintiff cannot establish a *prima facie* case of discrimination under Title VII; (2) Plaintiff cannot establish a *prima facie* case of discrimination under the New Mexico Human Rights Act; (3) Plaintiff failed to exhaust her administrative remedies on her national origin and race claims under Title VII and the New Mexico Human Rights Act; and (4) Plaintiff never reported any alleged discrimination to CSVH prior to her termination of employment, therefore her claim of termination of employment in violation of New Mexico public policy fails.

In her Response, Plaintiff argues that (1) the Defendants "trumped up" reasons for challenging Plaintiff's job performance that are "unworthy of belief"; (2) Plaintiff presented race and national origin claims of discrimination in her Amended Charge of Discrimination with the EEOC; (3) Plaintiff repeatedly complained of discrimination to her Union Representative and understood that this was relayed to management; and (4) the timing of Plaintiff's notifying Defendants of her "high risk" pregnancy and her subsequent termination is sufficient to establish that Defendants violated public policy.  [Doc. 46 at 10-12.]  Plaintiff provides her own Affidavit to dispute many of the undisputed material facts set out in Defendants' Motion. [Doc. 46-1.] Plaintiff also includes "additional material facts" in her Affidavit for the Court's consideration. [Id.]

In their Reply, Defendants argue that Plaintiff's Affidavit should be disregarded because it attempts to create sham issues of fact. [Doc. 53 at 2.]

## SUMMARY JUDGMENT STANDARD

Fed. R. Civ. P. 56 governs summary judgment. "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is appropriate only in cases where, looking at the facts in the light most favorable to the non-moving party, there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). An issue of fact is disputed, or genuine, if there is sufficient evidence so that a rational trier of fact could find for the non-movant. *Simms v. Okla. Ex rel. Dep't of Mental Health & Substance Abuse Servs*., 165 F.3d 1321, 1326 (10th Cir. 1999). "An issue of fact is 'material if, under the substantive law, it is essential to the proper disposition of the claim.'" *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 670 (10th Cir. 1998). The burden is on the movant to show there is an absence of evidence to support the non-moving party's case. *Celotex*, 477 U.S. at 325.

If the movant meets this initial burden, the burden then shifts to the non-moving party to contradict the facts that the movant put forward. The non-movant must "set forth specific facts that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the non-movant." *Adler v. Wal-Mart Stores, Inc*., 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted). "To accomplish this, the facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein." *Id.* The non-moving party cannot rest on allegations or denials, *Bones v. Honeywell Int'l, Inc*., 366 F.3d 869, 875 (10th Cir.2004), nor can the non-moving party rely on only conclusory allegations to defeat a properly

3

supported motion for summary judgment. *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995). The Court must disregard statements of mere belief. *Tavery v. United States*, 32 F.3d 1423, 1426 n.4 (10th Cir. 1994).

The summary judgment inquiry is essentially "whether the evidence presents a sufficient disagreement to require submission to the jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). More than a "disfavored procedural shortcut," summary judgment is an important procedure "designed 'to secure the just, speedy and inexpensive determination of every action.' Fed. R. Civ. P. 1." *Celotex*, 477 at 327.

The Local Rules of Civil Procedure for the United States District Court for the District of New Mexico mandate a precise structure for the presentation of facts for summary judgment briefing. D.N.M.LR-Civ. 56. The local rules provide that the Motion for Summary Judgment must contain concise numbered statements of all material facts as to which the movant contends no genuine issue exists. D.N.M.LR-Civ. 56.1(b). The Response must contain a concise statement of the facts stated by the movant to which the non-movant contends a genuine issue does exist. *Id.* All material facts in the memorandum in support of summary judgment will be deemed undisputed "unless specifically controverted" in the Response. *Id.* Any additional facts which the non-movant contends are material to the resolution of the motion must be lettered.[1] *Id.* The Reply must indicate each additional fact set forth by the non-movant which the movant

---

[1] Plaintiff failed in her Response to comply with the Local Rules by not lettering her additional facts as required by D.N.M.LR-Civ. 56.1(b). In spite of this failure, the Court considered the additional facts set forth in Plaintiff's Affidavit as discussed herein. Plaintiff is cautioned for future reference that the Federal Rules of Civil Procedure, as well as the Local Rules for the District of New Mexico, must be followed.

disputes or to which the movant asserts an objection.  *Id.*  Any material facts in the Response

which are not controverted will be deemed undisputed.  *Id.*

## FACTUAL BACKGROUND

As an initial matter, the Court addresses Plaintiff's use of her own Affidavit to contradict

and/or clarify her prior sworn testimony in order to dispute the undisputed material facts set forth

by Defendants.  In determining if an affidavit is merely a "sham" to create issues of fact, the

Tenth Circuit has held that "[t]here is authority for the proposition that in determining whether a

material issue of fact exists, an affidavit may not be disregarded because it conflicts with the

affiant's prior sworn statements.  In assessing a conflict under these circumstances, however,

courts will disregard a contrary affidavit when they conclude that it constitutes an attempt to

create a sham fact issue."  *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986) (citations

omitted).  The utility of summary judgment as a procedure for screening out sham fact issues

would be greatly undermined if a party could create an issue of fact merely by submitting an

affidavit contradicting his own prior testimony.  *Id.*  The court considers several factors when

evaluating an affidavit.  "Factors relevant to the existence of a sham fact issue include whether

the affiant was cross-examined during his earlier testimony, whether the affiant had access to the

pertinent evidence at the time of his earlier testimony or whether the affidavit was based on

newly discovered evidence, and whether the earlier testimony reflects confusion which the

affidavit attempts to explain.  *Id.*  In conjunction with this test, the court can consider that the

non-movant must "set forth specific facts that would be admissible in evidence in the event of

trial from which a rational trier of fact could find for the non-movant."  *Adler v. Wal-Mart*

*Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citations omitted).  "To accomplish this, the

facts must be identified by reference to affidavits, deposition transcripts, or specific exhibits

incorporated therein."  *Id.*  As mentioned above, the non-moving party cannot rest on allegations or denials, *Bones v. Honewell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir.2004), nor can the non-moving party rely on only conclusory allegations to defeat a properly supported motion for summary judgment.  *White v. York Intern. Corp.*, 45 F.3d 357, 363 (10th Cir. 1995).

Here, the factors discussed above convince the Court that to the extent Plaintiff's Affidavit conflicts with her prior deposition testimony, the Court will accept her deposition testimony for purposes of ruling on Defendants' Motion for Summary Judgment.  First, Plaintiff was deposed by the Defendants at which time her attorney had the opportunity to question her to clarify any issues regarding her claims that were raised by counsel for the Defendants.  Second, Plaintiff had the opportunity to review her deposition testimony and made no corrections and/or changes with respect to Defendants' undisputed material facts supported by Plaintiff's deposition testimony.  Third, Plaintiff's deposition testimony is unequivocal.  Fourth, as a participant in all of the events alleged to give rise to this litigation, Plaintiff had access to all of the pertinent evidence prior to her deposition and was also provided with pertinent evidence at her deposition. Fifth, Plaintiff does not suggest that she was confused by any of the questions at her deposition about which her affidavit is attempting to explain.  Sixth, Plaintiff is not offering any newly discovered evidence.  And finally, Plaintiff fails to incorporate any supporting evidence with her Affidavit to dispute Defendants' undisputed material facts, resting instead on bare allegations or denials.  Under these circumstances, the Court concludes the any conflict between Plaintiff's deposition testimony and her affidavit raises only sham issues of fact and, as such, will not be considered for summary judgment purposes.

A. **Undisputed Material Facts**

The following facts are drawn from the parties' statements of undisputed facts. The Court has taken as true those facts which are undisputed. Wherever the facts are disputed and the evidence is in conflict, the Court has construed the evidence in the light most favorable to Plaintiff as the nonmovant.

On February 18, 2008, Plaintiff was hired by CSVH as a Clinical Nurse 1 and began working on March 3, 2008. [Doc. 43 at 2, ¶ 1; Doc. 43-1 at 2; Doc. 46-1 at 1, ¶ 1.] Plaintiff acknowledged in writing that she had read and agreed to comply with CSVH's policies and procedures. [Doc. 43 at 2, ¶ 2; Doc. 43-1 at 3.] As part of its policies and procedures, CSVH has a harassment policy which applies to all of its employees, including union employees, and provides a procedure for promptly reporting and investigating alleged cases of sexual harassment. [Doc. 43 at 4, ¶ 20; Doc. 43-1 at 2, ¶ 10, Exh. E.] As a collective bargaining employee, Plaintiff knew she was governed by a union nursing contract and she was aware of her rights under that contract. [Doc.43 at 2, ¶ 3; Doc. 43-1 at 3.] Plaintiff knew that both the nursing union contract and CSVH's policies and procedures governed her employment. [Doc. 43 at 2, ¶ 4; Doc. 43-1 at 3.] Plaintiff understood that CSVH could involuntarily terminate her employment. [Doc. 43 at 2, ¶ 5; Doc. 43-1 at 4.] Plaintiff knew that CSVH could discipline her for breaching her ethical and professional duties. [Doc. 43 at 2, ¶ 6; Doc. 43-1 at 4.] Plaintiff understood that if she improperly treated patients she could be disciplined. [Doc. 43 at 3, ¶ 7; Doc. 43-1 at 4; Doc. 46-1 at 3, ¶ 7.]

Plaintiff requested a set schedule to accommodate her pregnancy, which CSVH granted. [Doc. 43 at 2, ¶ 8; Doc. 43-1 at 8-9; doc. 46-1 at 3, ¶ 8.] Plaintiff did not ask for any other accommodation for her pregnancy. [Doc. 43 at 3, ¶ 9; Doc. 43-1 at 8-9; Doc. 46-1 at 3, ¶ 9.]

Plaintiff never reported any alleged disability due to her pregnancy or otherwise to CSVH, nor did she provide any documentation regarding any alleged disability to CSVH. [Doc. 43 at 5, ¶ 26; Doc. 44 at 3, ¶ 15.]

On August 2, 2010, CSVH terminated Plaintiff's employment due to Plaintiff's repeated failures to follow policies and procedures regarding patient care, specifically citing incidents on February 6, 2010, March 4, 2010, and March 20, 2010. [Doc. 43, at 3, ¶ 10; Doc. 44 at 1, ¶ 3, Exh. A.] Plaintiff refused to sign the Termination form. [Doc. 43 at 3, ¶ 11; Doc. 44 at 2, ¶ 4, Exh. A; Doc. 46-1 at 4, ¶ 11.]  As a result of her termination, Plaintiff spoke with and provided notes to her union representative who filed a Grievance on Plaintiff's behalf against CSVH on August 16, 2010. [Doc. 43 at 3, ¶¶ 12, 13; Doc. 44 at 2, ¶ 5, Exh. B; Doc. 46-1 at 4, ¶ 12, 13.] Nowhere in the Grievance filed by Plaintiff's union representative is pregnancy discrimination, or discrimination for any other reason mentioned. [Doc. 43 at 3, ¶ 14; Doc. 43-1 at 6; Doc. 44 at 2, ¶ 6, Exh. B; Doc. 46-1 at 4, ¶ 14.]  Plaintiff understood that the Grievance would be investigated by CSVH. [Doc. 43 at 3, ¶ 15; Doc. 43-1 at 6.]  On November 5, 2010, after investigating Plaintiff's grievance, CSVH upheld Plaintiff's termination. [Doc. 43-1 at 3, ¶ 16; Doc. 44 at 2, Exh. C; Doc. 46-1 at 5, ¶ 16.]

The nursing union contract provided that an employee may appeal the decision on a grievance within five (5) days of the decision. [Doc. 43 at 4, ¶ 17; Doc. 44 at 2, ¶ 8, Exh. D.] Plaintiff was aware of her rights under the nursing union contract through her union representative. [Doc. 43 at 4, ¶ 18; Doc. 43-1 at 3.]  Plaintiff did not appeal the decision on her Grievance. [Doc. 43 at 4, ¶ 19; Doc. 43-1 at 7; Doc. 44, Exh. B.]

On October 31, 2010, Plaintiff filed a Charge of Discrimination with the EEOC alleging she had been discriminated against based on sex. [Doc. 43 at 4, ¶ 21; Doc. 44 at 3, ¶ 11, Exh. F;

Doc. 46-1 at 6, ¶ 21.]  Prior to filing her original Charge of Discrimination with the EEOC,

neither Plaintiff, nor anyone on her behalf, reported any discrimination to CSVH due to her

pregnancy. [Doc. 43 at 4, ¶¶ 22, 23; Doc. 43-1 at 8; Doc. 44 at 3, ¶ 12.]

On November 9, 2010, Plaintiff filed a charge of discrimination pursuant to the

New Mexico Human Rights Act alleging discrimination on the basis of "sex, female/pregnancy."

[Doc. 44, Exh. H.] The New Mexico Human Rights Bureau investigated Plaintiff's charge of

discrimination and issued a Determination of No Probable Cause on November 2, 2011.

[Doc. 43 at 5, ¶ 25; Doc. 44, Exh. H; Doc. 46-1 at 7, ¶ 25.]

On March 17, 2011, Plaintiff filed an Amended Charge of Discrimination with the EEOC

and checked boxes to include discrimination claims based on race, national origin and disability;

however, Plaintiff did not include any allegations of race, national origin, or disability

discrimination in the Amended Charge of Discrimination. [Doc. 43 at 4, ¶ 24; Doc. 44 at 3, ¶ 13,

Exh. G.]

### B.   Plaintiff's Additional Facts

Plaintiff included four (4) additional facts in her Affidavit for the Court's consideration

as follows:

A.   "I notified my supervisor, Brenda Stewart, in January 2010 that I was pregnant

when I requested in writing a set schedule for my appointments due to my high risk pregnancy.

Prior to becoming pregnant and asking for a set schedule I was praised as a competent nurse."

[Doc. 46-1 at 7.]

Plaintiff's Additional Fact A is not supported by evidence.  It is undisputed that Plaintiff

only requested a set schedule to accommodate her pregnancy.  It is also undisputed that Plaintiff

never reported any alleged disability due to her pregnancy or otherwise to CSVH, nor did she

provide any documentation regarding any alleged disability to CSVH.  Plaintiff fails to incorporate any supporting evidence that she informed her supervisor in writing that she had a high risk pregnancy.  In addition, Plaintiff fails to incorporate any evidence that she was praised as a competent nurse prior to becoming pregnant.  Plaintiff cannot rest on unsupported conclusory allegations or denials.

Plaintiff's Additional Fact A will not be considered for summary judgment purposes.

B.      "Defendants' statements that Plaintiff's work was not satisfactory or that she was failing to follow proper procedures are false.  Prior to becoming pregnant, I was told by my supervisor, Brenda Stewart, that I was a very good nurse and that my patients were lucky to have me as their nurse.  I received "3-4" markings on my evaluations, which indicated I was competent or above standard.  Defendants are in error in stating that I did not exhaust administrative remedies as to all my claims.  I specified in writing that I had been subjected to race and national origin discrimination in my EEOC filing."

Plaintiff's Additional Fact B is not supported by evidence.  It is undisputed that Plaintiff's termination of employment was the result of her failure to follow hospital policies and procedures regarding patient care.  Plaintiff fails to incorporate any supporting evidence that Defendants' statements regarding Plaintiff's work not being satisfactory are false.  Plaintiff further fails to incorporate any supporting evidence that she was told by her supervisor that she was a very good nurse and that her patients were lucky to have her.  Finally, Plaintiff fails to incorporate any supporting evidence that she received "3-4" markings on her evaluations indicating that her performance was competent or above standard.  Plaintiff cannot rest on unsupported conclusory allegations or denials.

Plaintiff's assertion that she exhausted her administrative remedies with respect to her race and national origin claims will be discussed below when the Court addresses Defendants' argument that Plaintiff failed to do so.

Plaintiff's Additional Fact B will not be considered for summary judgment purposes.

C.      "I was scheduled for an appointment to meet with HR on August 2, 2010, when I was given my termination documents.  I refused to sign as I was not in agreement with the reasons for termination." [Doc. 46-1 at 8.]

Plaintiff's Additional Fact C is essentially identical to Defendants' UMF 11.  Therefore, it  will be considered for summary judgment purposes as undisputed.

D.      "After she was terminated and to the best of Plaintiff's knowledge, another nurse was hired and this person was not pregnant." [Doc. 46-1 at 8.]

Plaintiff's Additional Fact D is not supported by evidence.  Plaintiff fails to incorporate any supporting evidence that another nurse was hired following her termination who was not pregnant.  Plaintiff cannot rest on unsupported conclusory allegations or denials

Plaintiff's Additional Fact D will not be considered for summary judgment purposes.

## ANALYSIS

### A.      Sex/Pregnancy Discrimination Under Title VII.

Plaintiff alleges that CSVH discriminated against her on the basis of sex/pregnancy in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e–5 *et seq*. Defendants move for summary judgment arguing that Plaintiff cannot establish a *prima facie* case of sex/pregnancy discrimination because Plaintiff was not doing satisfactory work at the time of her discharge. [Doc. 43 at 6.] Plaintiff argues that the Defendants "trumped up" reasons

to challenge Plaintiff's job performance and that their reasons are "unworthy of belief." [Doc. 46 at 11.]

      "[A] pregnancy discrimination claim is analyzed the same as other Title VII claims." *Atchley v. Nordam Group. Inc*., 180 F.3d 1143, 1148 (10th Cir.1999). Accordingly, the Court follows the three stage analysis outlined in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Id.*  First, "the plaintiff must prove a *prima facie* case of discrimination." *Atchley*, 180 F.3d at 1148.  Specifically, under Tenth Circuit law, she must show that: "(1) she is within the protected class; (2) she was doing satisfactory work; (3) she was discharged; and (4) her position remained open and was ultimately filled by a nonpregnant employee." *Id.* The plaintiff's burden at the first stage is "not onerous." *McCowan v. All Star Maint., Inc*., 273 F.3d 917, 922 (10th Cir.2001). It is "one of production, not persuasion; it can involve no credibility assessment." *Plotke v. White*, 405 F.3d 1092, 1099 (10th Cir.2005). If the plaintiff makes a *prima facie* showing of discrimination, the burden of production shifts to the defendant to "articulate[ ] a legitimate, nondiscriminatory reason for its action." *Atchley*, 180 F.3d at 1148. If the defendant meets this burden, "[a]t the summary judgment stage, it then becomes the plaintiff's burden to show that there is a genuine dispute of material fact as to whether the employer's proffered reason for the challenged action is pretextual—i.e. unworthy of belief." *Randle v. City of Aurora*, 69 F.3d 441, 451 (10th Cir.1995); see also *Trujillo v. PacifiCorp*, 524 F.3d 1149, 1158 (10th Cir.2008)("To defeat ... summary judgment, the plaintiff's burden is only to demonstrate a genuine dispute of material fact as to whether the proffered reasons were unworthy of belief."). "If the plaintiff succeeds both in making out a *prima facie* case of discrimination and in showing that defendant's reasons are pretextual,

plaintiff's claim will withstand summary judgment." *Dodd v. Riverside Health Sys., Inc.*, 76 F.3d 392, 1996 WL 29246, *2 (10th Cir. Jan. 25, 1996).

Here, Plaintiff has not shown all of the elements necessary to prove a *prima facie* case of pregnancy discrimination under Title VII.  While all the parties concede that Plaintiff belongs to a protected class and that she was discharged, the Plaintiff has failed to present any evidence to suggest that her work was satisfactory prior to her termination or that her position remained open and was ultimately filled by a nonpregnant employee.  It is undisputed that Plaintiff's termination of employment was the result of her failure to follow hospital policies and procedures regarding patient care, specifically with regard to three separate incidents occurring on February 6, 2010, March 4, 2010, and March 20, 2010.  Although Plaintiff disagreed with the grounds of her termination and subsequently filed a Grievance disputing those grounds, the investigation that followed upheld Plaintiff's termination and Plaintiff did not appeal that decision.  Furthermore, to the extent Plaintiff now asserts that she was unaware of her failure to follow policies and procedures and that  the Defendants "trumped up" reasons for challenging her job performance, Plaintiff only offers her own self-serving statements which are insufficient to create a genuine issue of material fact.  Likewise, Plaintiff has failed to provide any evidence that her position remained open and was ultimately filled by a nonpregnant employee.

Based on the undisputed material facts, Plaintiff has failed to make a *prima face* case of sex/pregnancy discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. Section 2000e–5 *et seq*.  Therefore, Defendants are entitled to summary judgment on Plaintiff's claim of sex/pregnancy discrimination in violation of Title VII.

**B.**     **Sex/Pregnancy Discrimination Under the New Mexico Human Rights Act.**

Plaintiff alleges that all of the Defendants discriminated against her on the basis of

sex/pregnancy in violation of the New Mexico Human Rights Act ("NMHRA"), NMSA 1978,

Section 28-1-7, *et seq*.  Defendants move for summary judgment arguing that Plaintiff cannot

establish a *prima facie* case of sex/pregnancy discrimination because Plaintiff was not doing

satisfactory work at the time of her discharge, and that prior to being discharged neither Plaintiff,

nor anyone on her behalf, ever complained to CSVH that she was being discriminated against

because of her pregnancy. [Doc. 43 at 8.]  Plaintiff argues that the Defendants "trumped up"

reasons to challenge Plaintiff's job performance and that their reasons are "unworthy of belief."

[Doc. 46 at 11.]

The Title VII burden-shifting methodology described above applies to Plaintiff's claims

brought under the NMHRA.  *See Juneau v. Intel Corp.*, 139 N.M. 12, 15, 127 P.3d 548, 551

(2005).  Under this methodology, "a plaintiff bears the initial burden of establishing a *prima

facie* case; once the *prima facie* case is established, the employer bears the burden of producing

evidence of a legitimate, nondiscriminatory reason for its action; and finally, a plaintiff must be

afforded an opportunity to rebut the employer's proffered reason." *Garcia-Montoya v. State

Treasurer's Office*, 2001-NMSC_003, at ¶ 39, 130 N.M. 25 (N.M. 2001)(quoting *Gonzales v.

N.M. Dep't of Health*, 2000 NMSC 029, ¶ 21, 129 N.M. 586, 11 P.3d 550). One method of

establishing a *prima facie* case under *McDonnell Douglas* is for a plaintiff to show that he or she

"is a member of [a] protected group, that he [or she] was qualified to continue in his [or her]

position," that the employer removed him or her from the position, and "that his [or her] position

was filled by someone not a member of the protected class." *Id.* (quoting *Smith v. FDC Corp.*,

109 N.M. 514, 517, 518, 787 P.2d 433, 437).  If a plaintiff establishes a *prima facie* case, there is

14

"a presumption that the employer unlawfully discriminated against the employee." *Id.* (quoting *Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981)). However, the presumption "drops from the case" if the defendant satisfies the burden of producing evidence of a legitimate, nondiscriminatory reason for the employment action. *Id.* (quoting *Tex. Dep't of Community Affairs v. Burden*, 450 U.S. at 255 & n. 10, 101 S.Ct 1089). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* (quoting *Tex. Dep't of Community Affairs v. Burden*, 450 U.S. at 253, 101 S.Ct. 1089).

Here, Plaintiff has not shown all of the elements necessary to prove a *prima facie* case of sex/pregnancy discrimination under the NMHRA. While all the parties concede that Plaintiff belongs to a protected class and that she was discharged, the Plaintiff has failed to present any evidence to suggest that she was qualified to continue in her position or that her position was filled by someone who was not pregnant. It is undisputed that Plaintiff's termination of employment was the result of her failure to follow hospital policies and procedures regarding patient care, specifically with regard to three separate incidents occurring on February 6, 2010, March 4, 2010, and March 20, 2010. While Plaintiff disagreed with the nondiscriminatory reasons for her termination and had an opportunity to rebut those grounds by filing a Grievance, it is undisputed that nowhere in the Grievance filed by Plaintiff's union representative is pregnancy discrimination, or discrimination for any other reason mentioned. Furthermore, it is undisputed that the only accommodation requested by Plaintiff for her pregnancy was a set schedule, which CSVH granted. Finally, it is undisputed that the investigation that followed Plaintiff's Grievance upheld Plaintiff's termination which Plaintiff did not appeal. As previously stated, to the extent Plaintiff now purports to dispute the facts regarding her termination by

15

claiming that Defendants' statements that her work was not satisfactory or that she was failing to follow proper procedures are false, Plaintiff's self-serving statements are insufficient to create a genuine issue of material fact.  Likewise, Plaintiff has failed to provide any evidence that her position remained open and was ultimately filled by a nonpregnant employee.

Based on the undisputed material facts, Plaintiff has failed to make a *prima face* case of sex/pregnancy discrimination in violation of the New Mexico Human Right Act,  NMSA 1978, Section 28-1-7, *et seq*.   Therefore, Defendants are entitled to summary judgment on Plaintiff's claim of sex/pregnancy discrimination in violation of the New Mexico Human Right Act.

### C.        Exhaustion of Administrative Remedies

Defendants move for summary judgment arguing that exhaustion of administrative remedies is a prerequisite to a discrimination suit and that Plaintiff has failed to exhaust her administrative remedies with respect to her race and national origin claims of discrimination. [Doc. 43 at 9.]   More specifically, Defendants argue that even though the Plaintiff checked the boxes on her Amended Charge of Discrimination form to include claims of discrimination based on "race" and "national origin," the Plaintiff failed to include any factual allegations to support those claims. [Doc. 43 at 11.]  Plaintiff claims that her Affidavit "clearly indicates" that she exhausted her administrative remedies as to all of her claims because she presented her race and national origin claims in her EEOC filing.  [Doc. 46 at 11, Doc. 46-1 at 8.]

A plaintiff must administratively exhaust both Title VII and NMHRA claims before bringing them in federal court.  Title VII creates a work-sharing deferral system between the EEOC and the states that have their own employment discrimination legislation. See 42 U.S.C. § 2000e–5(c), (d). In the states that possess their own employment discrimination legislation, the EEOC must generally defer to state or local remedies. *See EEOC v. Superior Temp. Servs., Inc*.,

56 F.3d 441, 447 (2d Cir.1995).  The NMHRA places New Mexico among those states that have

their own employment discrimination legislation and contact agencies. See 29 C.F.R. § 1601.74

(2011). In New Mexico, a complainant can, upon meeting filing requirements, proceed with his

or her grievance either through the EEOC or through the NMHRD. *See Mitchell–Carr v.*

*McLendon*, 127 N.M. 282, 286, 980 P.2d 65, 69 (1999). Whether complainants decide to pursue

their grievances with the EEOC or with the NMHRD, they must exhaust their respective

regimes' administrative remedies before seeking judicial review. *See Jones v. Runyon*, 91 F.3d

1398, 1399 (10th Cir.1996) ("Exhaustion of administrative remedies is a jurisdictional

prerequisite to suit under Title VII."); *Mitchell–Carr v. McLendon*, 127 N.M. at 288, 980 P.2d at

71 ("[E]xhaustion of administrative remedies is a prerequisite to suit under the NMHRA."

(citing *Luboyeski v. Hill*, 117 N.M. 380, 382, 872 P.2d 353, 355 (1994)). Under the work-sharing

agreement between the EEOC and the NMHRD, each agency designates the other as its agent for

the purpose of receiving and drafting charges. *See Mitchell–Carr v. McLendon*, 127 N.M. at 286,

980 P.2d at 69. Thus, if a person "initially files a complaint with the EEOC, that complaint will

be deemed to have been properly filed with the [NMHRD] as well." *Mitchell–Carr v.*

*McLendon*, 127 N.M. at 286, 980 P.2d at 69.

The Tenth Circuit has consistently held that filing a charge of discrimination with the

EEOC is a jurisdictional prerequisite to the institution of a lawsuit based on a claim of

employment discrimination under Title VII. *See Alcivar v. Wynne*, 268 Fed.Appx. 749, 753 (10th

Cir.2008) ("The Tenth Circuit has consistently held that 'exhaustion ... is a jurisdictional

prerequisite to suit under Title VII—not merely a condition precedent to suit.' ") (quoting

*Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir.2005)); *Jones v. Runyon*, 91

F.3d 1398, 1399 (10th Cir.1996) ("Exhaustion of administrative remedies is a jurisdictional

prerequisite to suit under Title VII."). Without such a filing, federal courts lack subject-matter

jurisdiction to entertain discrimination claims under that statute. *See Faragalla v. Douglas*

*County Sch. Dist. RE 1, Nos. 09–1393, 10–1433*, 411 Fed.Appx. 140, 159, 2011 WL 94540, at

*16 (10th Cir. Jan. 12, 2011) ("We conclude the district court did not err in dismissing

Ms. Faragalla's Title VII claim against DCFCE for lack of subject matter jurisdiction based on

her failure to exhaust administrative remedies.").

 "A plaintiff's claim in federal court is generally limited by the scope of the

administrative investigation that can reasonably be expected to follow the charge of

discrimination submitted to the EEOC."  *MacKenzie v. City of County of Denver*, 414 F.3d 1266,

1274 (10th Cir. 2005).  "We liberally construe charges filed with the EEOC in determining

whether administrative remedies have been exhausted as to a particular claim."  *Jones v. United*

*Parcel Serv., Inc*. 502 F.3d at 1186.  "This more lenient pleading standard contemplates the fact

that administrative charges of unlawful employment practices are regularly filled out by

employees who do not have the benefit of counsel."  *Mitchell v. City and County of Denver*, 112

Fed.Appx. 662, 667 (10th Cir. 2004).  However, "[t]he charge must contain facts concerning the

discriminatory . . . actions underlying each claim*."  Jones v. United Parcel Serv., Inc*., 502 F.3d

at 1186.  In *Jones v. United Parcel Service*, the Tenth Circuit explained how the requirement that

the plaintiffs must exhaust each discrete claims works in conjunction with courts liberally

construing EEOC charges.

> The next step in determining whether a plaintiff has exhausted her administrative
> remedies is to determine the scope of the allegations raised in the EEOC charge
> because "[a] plaintiff's claim in federal court is generally limited by the scope of the
> administrative investigation that can reasonably be expected to follow the charge of
> discrimination submitted to the EEOC...." We emphasize, however, that our inquiry
> is limited to the scope of the administrative investigation that can reasonably be
> expected to follow from the discriminatory acts alleged in the administrative charge.

> In other words, the charge must contain facts concerning the discriminatory and retaliatory actions underlying each claim; this follows from the rule that "each discrete incident" of alleged discrimination or retaliation "constitutes its own 'unlawful employment practice' for which administrative remedies must be exhausted."

*Jones v. United Parcel Service*, 502 F.3d at 1186 (citations omitted).

By way of example, in *Jones v. United Parcel Service, Inc*., the Tenth Circuit held, *inter alia*, that Jones had exhausted his administrative remedies with respect to his retaliation claim even though he had failed to check the box for "retaliation" because the text of the charge sufficiently described allegations supporting that claim.  502 F.3d at 1187.  Conversely, the Tenth Circuit also held that Jones had *not* exhausted his administrative remedies with respect to his failure-to-accommodate claim where Jones had checked "no" in response to the question whether he advised his employer he needed accommodation and where the text of the charge *did not* contain facts that would prompt an investigation of such a claim.  *Id.*  Similarly in *Duncan v. Manager Department of Safety*, 397 F.3d 1300 (10th Cir. 2005), a former police officer filed an EEOC charge against the city and checked the box for retaliation. *See* 397 F.3d at 1314.  However, the Tenth Circuit held that none of the allegations in her original EEOC charge were sufficient to support a retaliation claim. *Id.*  While the officer presented facts in her district court complaint to support an allegation of retaliation, those events had occurred months after the filing of her original EEOC charge.  The Tenth Circuit noted that because the officer did not file an additional EEOC charge alleging that specific retaliatory act, she did not exhaust her administrative remedies and thus the district court correctly dismissed her claim for retaliation. *Id.*

Here, it is undisputed that the Plaintiff filed her original Charge of Discrimination on October 31, 2010, and checked the box indicating discrimination based on "sex." The text of her original Charge of Discrimination states as follows:

> I had been employed in the position of registered nurse working in the Emergency Room since February 18, 2010. I had no performance problems until I requested an adjustment to my work schedule in order to see my physician since my pregnancy was considered a high risk. My supervisor from that date on began to subject me to disciplinary action and yelling at me in front of patients. My supervisor's behavior made me ill requiring me to take medical leave and then I was told I was terminated while on my maternity leave. I believe that since requesting an accommodation in January, 2010 due to my pregnancy my supervisor changed her behavior towards me and made it difficult to work under her direction. Prior to requesting the accommodation my supervisor praised my work with patients. I was terminated from my employment as a result.

> This is a violation of Title VII of the Civil Rights Act and the Pregnancy Act.

[Doc. 44, Exh. F.][2]

It is undisputed that on March 17, 2011, Plaintiff filed an Amended Charge of Discrimination with the EEOC and this time checked boxes indicating claims of discrimination based on race, national origin and disability.[3] Plaintiff's Amended Charge of Discrimination was created by making a copy of the original Charge of Discrimination and typing "Amended" at the top of the copied form, checking the boxes indicating claims of discrimination based on

---

[2]  On November 9, 2010, Plaintiff also filed a separate charge of discrimination pursuant to NMHRA wherein she alleged she was "discriminated against on the basis of [] Sex, Female/Pregnancy in violation of Title VII of the Civil Rights Act of 1964 and the New Mexico Human Rights Act[.]" [Doc. 44, Exh. H.] The New Mexico Human Rights Bureau investigated Plaintiff's charge of discrimination based on sex, female pregnancy and issued a Determination of No Probable Cause on November 2, 2011. [Id.]

[3]  Because of the work-sharing agreement between the EEOC and the NMHRD with each agency designated as an agent for the other for the purpose of receiving and drafting charges, Plaintiff's Amended Charge of Discrimination filed with the EEOC asserting claims of discrimination based on race, national origin and disability is deemed to have been properly filed with the NMHRD as well. *Mitchell–Carr v. McLendon*, 127 N.M. at 286, 980 P.2d at 69.

"race," "national origin," "disability,"[4] and "other - pregnancy," and typing the following

additional paragraph in the text of the charge:

> This is also a violation of the New Mexico Human Rights Act. The supervisor who
> harassed and berated me, and eventually terminated my employment, is Emergency
> Room Director Kelly Bernatine. The Manager of the Emergency Room, Brenda
> Stewart, was also responsible for treating me with hostility and terminating my
> employment. I am naming them individually.

[Doc. 44, Exh. G.]

Thus, the question before the Court is whether the Plaintiff has exhausted her

administrative remedies on her race and national origin claims where she simply checked those

boxes on her Amended Charge of Discrimination but failed to amend the text or to provide facts

concerning any discriminatory actions underlying those claims. A plain reading of the

allegations contained in Plaintiff's original Charge of Discrimination points only to Plaintiff's

claims regarding discriminatory treatment following her request for an accommodation due to

her pregnancy. A plain reading of the added language in Plaintiff's Amended Charge of

Discrimination indicates that (1) Plaintiff is bringing her claim of discrimination under the

NMHRA as well as Title VII and (2) Plaintiff is identifying by name her two supervisors who

had previously been identified only by position. Thus, while Plaintiff argues that she "specified

in writing that I had been subjected to race and national origin discrimination in my EEOC

filing," there are no facts in her original or Amended Charge of Discrimination concerning any

discriminatory action towards Plaintiff underlying her claims of race and national origin.

Because the federal district court is generally limited by the scope of the administrative

investigation that can reasonably be expected to follow the charge of discrimination submitted to

---

[4] Plaintiff does not assert any claims for disability discrimination in her Complaint. [See Doc. 1.] It is also
undisputed that Plaintiff never reported any alleged disability due to her pregnancy or otherwise to CSVH, nor did
she provide any documentation regarding any alleged disability to CSVH. [Doc. 43 at 5, ¶ 26, Doc. 44 at 3, ¶ 15.]

the EEOC, and because Plaintiff limited the scope of her allegations to claims related to discrimination based on sex/pregnancy, Plaintiff has failed to exhaust her administrative remedies with respect to her claims of discrimination based on race and national origin.

Based on the undisputed material facts and the foregoing reasons, Defendants are entitled to summary judgment on Plaintiff's discrimination claims of race and national origin under Title VII and the New Mexico Human Rights Act.

### D.    Termination of Employment in Violation of Public Policy

Defendants move for summary judgment on Plaintiff's claim that her termination of employment violated public policy arguing that there can be no public policy claims against employers who have not violated the law. [Doc. 43 at 11.] Plaintiff argues that she repeatedly complained of discrimination to her union representative and that the time of her notifying Defendants of her "high risk" pregnancy and her subsequent termination is sufficient to establish that Defendants violated public policy. [Doc. 46 at 10-12.]

Where termination of employment does not violate the law, a claim of wrongful discharge in violation of public policy must fail.  *Trujillo v. Nora*, 41 P.2d 333, 341 (N.M. 2001); *Sanders v. Arneson Products, Inc.*, 91 F.3d 1351, 1354 (9th Cir. 1996) (applying the rationale that there can be "no public policy claim against employers who have not violated the law.")).

Here, it is undisputed that Plaintiff's termination of employment was the result of her failure to follow hospital policies and procedures regarding patient care.  Furthermore, it is undisputed that (1) the only accommodation requested by Plaintiff for her pregnancy was a set schedule, which CSVH granted; (2) prior to her filing her original Charge of Discrimination, neither Plaintiff, nor anyone on her behalf, ever reported any discrimination to CSVH due to Plaintiff's pregnancy, or for any other reason;  and (3) nowhere in the Grievance filed by

Plaintiff's union representative is pregnancy discrimination, or discrimination for any other reason mentioned.   The fact that Plaintiff now asserts she informed CSVH in writing she had a "high risk" pregnancy and repeatedly reported discrimination to her union representative is self-serving,  unsupported by evidence, and does not create a genuine issue of material fact.  Plaintiff has failed to provide any evidence that her termination was unlawful or for a discriminatory reason.

Therefore, Defendants are entitled to summary judgment on Plaintiff's claim that her termination of employment violated New Mexico public policy.

## **CONCLUSION**

For the foregoing reasons, Defendants' Motion for Summary Judgment is GRANTED as follows:

1.      Defendants' Motion for Summary Judgment with respect to Plaintiff's claims of sex/pregnancy discrimination under Title VII in Count I of Plaintiff's Complaint is GRANTED and this claim is dismissed with prejudice;

2       Defendants' Motion for Summary Judgment with respect to Plaintiff's claims of sex/pregnancy discrimination under the New Mexico Human Rights Act in Count II of Plaintiff's Complaint is GRANTED and this claim is dismissed with prejudice;

3.      Defendants' Motion for Summary Judgment with respect to Plaintiff's failure to exhaust her administrative remedies on her national origin and race claims under Title VII and the New Mexico Human Rights Act in Counts I and II of Plaintiff's Complaint is GRANTED and these claims are dismissed without prejudice; and

4.      Defendants' Motion for Summary Judgment with respect to Plaintiff's claim that her termination of employment violated New Mexico public policy in Count III of Plaintiff's Complaint is GRANTED and this claim is dismissed with prejudice.

**IT IS SO ORDERED.**

_____
**ALAN C. TORGERSON**
**United States Magistrate Judge,**
**Presiding by Consent**